Richard N. BOWMAN, Appellee,

v.

WESTERN AUTO SUPPLY COMPANY and John Leach, Appellants.

No. 92–1050.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 18, 1992.

Decided Jan. 29, 1993.

Rehearing and Rehearing En Banc Denied March 30, 1993.

Dennis D. Palmer, Kansas City, MO, argued (Dennis D. Palmer, William E. Quirk and Bradley D. Holmstrom, on the brief), for appellants.

David Robert Morris, Overland Park, KS (David R. Morris and Lisa Noel Gentleman on the brief), for appellees.

Before HANSEN, Circuit Judge, HEANEY and ROSS, Senior Circuit Judges.

HANSEN, Circuit Judge.

Richard Bowman ("Bowman") filed a suit against Western Auto Supply Company and John Leach (collectively "Western Auto") pursuant to the civil action provision of the Racketeer Influenced and Corrupt Organizations Act (RICO), alleging that he was discharged from his employment for speaking out against Western Auto's alleged RICO violations. Western Auto moved to dismiss on the grounds that Bowman lacked standing to bring a civil RICO suit. The district court denied Western Auto's motion and certified the issue for appeal. We now reverse.

## I.

Richard Bowman was an employee of Western Auto Supply Company when he allegedly discovered that the company was "double billing" its merchandise suppliers by charging them for advertising and promotional services they never received. On August 22, 1986, Bowman was discharged from his job. On August 20, 1990, he filed this suit, seeking recovery pursuant to RICO's civil action provision contained in 18 U.S.C. § 1964(c). He contended that his discharge came because he protested, spoke out against, and criticized his employer's allegedly fraudulent scheme. Specifically, he alleged that he was injured as a result of Western Auto's violations of 18 U.S.C. § 1962(a), (b), (c), and (d).

Western Auto filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), taking the position that Bowman lacked standing to bring a § 1964(c) civil RICO suit because any injuries he sustained as a result of being discharged from his employment were not a result of RICO activity. The district court denied the motion but granted Western Auto's motion to certify the issue for interlocutory appeal. 773 F.Supp. 174. On appeal, Bowman contends that he has standing to sue based on injuries arising from both alleged substantive violations of RICO as delineated in 18 U.S.C. § 1962(a), (b), and (c), and an alleged conspiracy to violate RICO as prohibited in 18 U.S.C. § 1962(d).

We review de novo the district court's denial of Western Auto's motion to dismiss. *See Klett v. Pim*, 965 F.2d 587, 589 (8th Cir.1992) ("The complaint must reveal an insuperable bar to relief to warrant a Rule 12(b)(6) dismissal," and such a dismissal is subject to de novo review.).

## II.

RICO contains a civil enforcement scheme that permits private individuals harmed by criminal RICO activity to recover civil damages. The Act provides as follows:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). This provision confers standing on any individual who has experienced injury to his or her business or property that occurred "by reason of" a RICO violation.[1] At issue in this appeal is wheth-

---

1. RICO violations are found in 18 U.S.C. § 1962. Specifically, section 1962(a) makes it "unlawful for any person who has received any income derived ... from a pattern of racketeering activity ... to use or invest ... such income ... in acquisition of ... any enterprise which is engaged in ... interstate ... commerce." Section 1962(b) makes it "unlawful for any person through a pattern of racketeering activity ... to acquire ... any interest in ... any enterprise which is engaged in ... interstate ... commerce." Section 1962(c) makes it "unlawful for any person ... associated with any enterprise engaged in ... interstate ... commerce [ ] to ... participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity...." Section 1962(d) makes it "unlawful for any person to conspire to violate ... (a), (b), or (c) of this section." 18 U.S.C. § 1962.

Section 1961(1) of RICO defines racketeering activity, in part, as "any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year," or "any act which is in-

er Bowman's alleged injuries resulted from a RICO violation such that he has standing to bring a suit for civil damages against his employer.

## III.

■ Although this court has not before been presented with this issue, the circuit courts that have are in agreement that an employee discharged for criticizing or refusing to participate in the employer's racketeering activity lacks standing to bring a civil suit when the underlying violation is based on section 1962(a)–(c) of RICO. *See Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151 (6th Cir.1990) (Because his injuries were a result of being fired, not of RICO violation, plaintiff discharged after reporting employer's RICO scheme lacked standing to bring suit.); *Reddy v. Litton Industries, Inc.*, 912 F.2d 291 (9th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 332, 116 L.Ed.2d 272 (1991) (Employee discharged for refusing to participate in cover-up of illegal scheme lacked standing to recover under § 1962(a) and (c).); *O'Malley v. O'Neill*, 887 F.2d 1557 (11th Cir.1989), *cert. denied*, 496 U.S. 926, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990) (Plaintiffs lacked standing to bring civil RICO action because their injuries were caused by the decision to fire them, not by RICO activity.); *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162 (3d Cir.1989) (Plaintiff discharged to prevent her from reporting fraudulent scheme lacked standing to pursue civil RICO suit for alleged violations of § 1962(a) and (c) because her injury was not a result of a predicate act.); *Burdick v. American Express Co.*, 865 F.2d 527 (2d Cir.1989) (per curiam) (Plaintiff who complained of and refused to participate in corrupt activity was injured as a result of employer's decision to fire him, not as a result of predicate RICO act, and thus lacked standing.); *Cullom v. Hibernia National Bank*, 859 F.2d 1211 (5th Cir.1988) (Plaintiff discharged for refusing to participate in fraudulent activity lacked standing to recover under civil RICO, as injury resulting from discharge did not flow from RICO predicate acts.);

dictable under [a variety of] provisions of title

*Nodine v. Textron, Inc.*, 819 F.2d 347 (1st Cir.1987) (Plaintiff fired for reporting employer's illegal scheme lacked standing to bring civil RICO suit).

We agree with the weight of the authority. The Supreme Court has held that in order for a litigant to establish standing to bring a suit under § 1964(c) of RICO, the injury alleged must be a result of a violation of § 1962. *Sedima S.P.R.L. v. ImRex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In that opinion, the Court stated as follows:

A violation of § 1962(c) ... requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.... [T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation. As the Seventh Circuit has stated, "[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." *Haroco, Inc. v. American National Bank & Trust Co. of Chicago*, 747 F.2d 384, 398 (1984), aff'd, *post*, [473 U.S.] p. 606 [105 S.Ct. 3291, 87 L.Ed.2d 437].

But the statute requires no more than this. Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.... Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.

*Sedima*, 473 U.S. at 496–97, 105 S.Ct. at 3285 (footnotes omitted). When the underlying RICO violation alleged is either section 1962(a), (b), or (c), the analysis is fairly straightforward. The simple act of discharging an employee as alleged in this case does not constitute racketeering activity as defined in RICO, and thus does not fall within the definition of what the Su-

18, United States Code." 18 U.S.C. § 1961(1).

preme Court has termed "predicate acts" under RICO. *See Shearin*, 885 F.2d at 1167 ("[T]he Court specified 'predicate acts' to mean those included as racketeering activities in the catalogue of crimes found in section 1961(1).") (citing [*Sedima,*] 473 U.S. at 495, 105 S.Ct. at 3284). Accordingly, as a matter of law, Bowman lacks standing to bring a "whistle blower" wrongful discharge suit under 18 U.S.C. § 1964(c) when the underlying RICO violation is based on § 1962(a), (b), or (c).

## IV.

■ While *Sedima* determined that a civil action based on a violation of § 1962(c), a substantive RICO violation, must allege the commission of a predicate RICO act, the Court did not address the same question with respect to a civil action based on a § 1962(d) conspiracy claim.[2] As a result, the more difficult question is whether a plaintiff such as Bowman may sue under § 1964(c) when he alleges a conspiracy to violate RICO. Specifically, Bowman contends he suffered injury to his business or property as a result of a conspiracy on the part of Western Auto to violate RICO. *See* 18 U.S.C. § 1962(d).

Despite their agreement regarding civil actions based on violations of § 1962(a)–(c), the circuits disagree as to the requirements that must be met to establish standing to bring a civil suit when the underlying violation is an alleged § 1962(d) RICO conspiracy claim. Some courts have held that in order to establish standing to recover civil damages in such a case, the act that caused the harm must be an act specifically delineated as a RICO predicate act in § 1961(1). *See Miranda v. Ponce Federal Bank*, 948 F.2d 41, 48 (1st Cir.1991) ("An actionable claim under § 1962(d), like one under section 1962(c), requires that the complainant's injury stem from a predicate act within the purview of 18 U.S.C. § 1961(1)."); *Reddy v. Litton Industries*, 912 F.2d 291 (9th Cir. 1990) (Conspiratorial act that causes the

injury must be a predicate act as defined in § 1961 in order to satisfy standing requirement of civil RICO provision.); *Hecht v. Commerce Clearing House*, 897 F.2d 21 (2d Cir.1990) (same). Other courts, however, have determined that the statute places no such limitation on civil RICO standing, and that so long as the overt act was done in furtherance of a conspiracy to violate RICO, the act need not be a § 1961(1) predicate RICO act. *See Schiffels v. Kemper*, 978 F.2d 344, 351 (7th Cir.1992) (Plaintiff who "alleges an injury to her business or property proximately caused by an overt act in furtherance of a conspiracy to violate RICO, even though the overt act is not a predicate act required in a RICO pattern," has standing.); *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1169 (3d Cir. 1989) ("[E]ither racketeering activity or classic overt conspiracy acts may qualify as 'predicate acts' to a RICO violation that causes injury.").

■ A nonconspirator cannot be injured in his or her business or property by a mere agreement to violate RICO, that is a RICO conspiracy in which no overt acts have been committed. Some overt act must therefore occur in order to establish civil standing based on § 1962(d). The Second Circuit reasoned accordingly that Congress must have intended "injury-causing overt acts" to be the underlying basis for civil RICO standing. *Hecht*, 897 F.2d at 25. Because Congress targeted specific types of activity in the RICO statute, rather than "all unlawful acts," the court determined that the limiting factor must be that only harm from a § 1961(1) predicate act done in furtherance of a RICO conspiracy will suffice to establish standing. This approach, therefore, treats suits based on an alleged conspiracy to violate RICO in a similar manner to those suits based on substantive RICO violations. *See, e.g., Miranda*, 948 F.2d at 48.

---

**2.** The plaintiff in *Sedima* also alleged a violation of § 1962(d), but the Court limited its standing analysis to the § 1962(c) claim. *See Schiffels v. Kemper*, 978 F.2d 344, 349 (7th Cir.1992) ("The reason [that the Court's standing discussion did

not directly address § 1962(d) ] seems apparent: there was no need to address standing to raise a § 1962(d) claim, because if a plaintiff has standing to bring a § 1962(c) claim he necessarily has standing to raise a § 1962(d) claim.").

The Seventh Circuit, on the other hand, has arrived at a different conclusion, finding nothing in the statute to suggest that application of the predicate act requirement to suits based on § 1962(d) was intended. *Schiffels*, 978 F.2d 344. The *Schiffels* court reasoned:

> [S]ince RICO conspiracy does not require the actual commission of a predicate act, it follows that the act causing plaintiff's injury need not be a predicate act of racketeering. A person directly injured by an overt act in furtherance of a RICO conspiracy has been injured "by reason of" the conspiracy. Since a conspiracy to violate RICO's substantive provisions is itself a violation of RICO ... a person injured "by reason of" the conspiracy has been injured "by reason of" the RICO violation. That is all that § 1964(c) requires for standing to bring a civil RICO action.

*Id.* at 348–349. The court concluded that "[a]fter all, RICO, which grants standing to anyone injured in his business or property 'by reason of' a RICO violation, prohibits conspiracies, which do not require the commission of any predicate offenses." *Id.* at 351. The Seventh Circuit was satisfied that, by imposing a proximate cause requirement on standing in civil RICO, the Supreme Court had sufficiently restricted the scope of potential liability for RICO violators. *Id.* at 350–51 (citing *Holmes v. Securities Investor Protection Corp.*, — U.S. —, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)).

In *Holmes v. Securities Investor Protection Corp.*, — U.S. —, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), the case upon which the Seventh Circuit relies to prevent civil RICO liability from being "unlimited," the Supreme Court addressed civil RICO standing in the context of causation, that is the connection between the injury and the RICO act that allegedly caused it. Plaintiff Securities Investor Protection Corpora-

tion (SIPC) claimed defendant Holmes conspired in a stock manipulation scheme that resulted in two broker-dealers being unable to meet their obligations to their customers. As a result, SIPC's statutory duty to advance funds to reimburse the injured customers of the two broker-dealers was triggered. The Supreme Court held that the SIPC could not recover from Holmes under RICO.

According to the Supreme Court, although RICO could be read to require that a defendant's RICO violation be only a but-for cause of plaintiff's injury in order to establish standing under § 1964, Congress did not intend the provision to be read so expansively. *Holmes*, — U.S. at — —, 112 S.Ct. at 1316–17. Instead, the Court adopted a proximate causation standard, which it borrowed from federal antitrust law. One of the "central elements" of proximate cause under antitrust has been the directness of the relationship between "the injury asserted and the injurious conduct alleged." *Id.* at —, 102 S.Ct. at 1318.[3] By applying a proximate cause requirement to civil RICO standing, the Supreme Court thus set limitations within which individuals and their harms must fall in order to establish standing. *See Schiffels*, 978 F.2d 344.

We acknowledge the split among the circuits regarding standing to bring a civil RICO action based on a RICO conspiracy violation. We also recognize that Congress expressly prohibited a conspiracy to engage in a pattern of racketeering as well as a pattern of racketeering. Thus both the substantive acts and a conspiracy to commit them carry criminal sanctions for the perpetrator. We further are cognizant of the Supreme Court's language in *Sedima* supporting a broad reading of the RICO statute. *Sedima*, 473 U.S. at 497–98, 105 S.Ct. at 3285 ("RICO is to be read broadly ... [and] is to 'be liberally construed to

---

**3.** The reasons for including a directness element, according to the Court, are at least threefold. First, the less direct the relationship, the more difficult it is to determine how much of the damage is due to the alleged RICO conduct and how much to extraneous conduct. Second, courts may have significant difficulty apportion-

ing damages among plaintiffs who are removed, in varying degrees, from the alleged injurious conduct. Third, the more directly an individual is injured, the more likely that individual will take on the role of private attorney general, and thus help uphold the law. *Holmes*, — U.S. at — —, 112 S.Ct. at 1311.

effectuate its remedial purposes.' ") (quoting Pub.L. 91–452, § 904(a), 84 Stat. 947). Indeed, in *Sedima* the Supreme Court reversed a too restrictive reading of the type of harm that must be alleged in order to establish standing.

At the same time, the Supreme Court itself has imposed limitations on standing by rejecting a but-for causation requirement and applying a more restrictive proximate causation requirement between the injury and the harm alleged. *Holmes*, —— U.S. ——, 112 S.Ct. 1311. We therefore do not read an admonition to interpret RICO broadly as a requirement that we decline all opportunities to carefully delineate the types of plaintiffs who may validly bring a suit under RICO's civil enforcement provisions. Imposing the predicate act requirement on civil claims based on violations of § 1962(d) narrows the focus of those suits to the specific racketeering activity that lies at the heart of the RICO statute. While this might appear to collapse a civil RICO suit based on a § 1962(d) conspiracy into those suits based on substantive RICO violations as delineated in § 1962(a)–(c), any other result would render this decision merely a guide to the artful pleader. A civil litigant, eager to collect treble damages under federal law (or to use the threat of those enhanced damages as bargaining leverage), rather than bringing a wrongful discharge claim in state court could circumvent the predicate act requirement applicable to suits based on § 1962(a)–(c) simply by alleging a conspiracy to commit those same substantive acts.

■ We hold that standing to bring a civil suit pursuant to 18 U.S.C. § 1964(c) and based on an underlying conspiracy violation of 18 U.S.C. § 1962(d) is limited to those individuals who have been harmed by a § 1961(1) RICO predicate act committed in furtherance of a conspiracy to violate RICO. Because Bowman, who contends that he was fired for protesting, speaking out against, and criticizing Western Auto's alleged double billing scheme, has not alleged such an injury, he lacks standing to bring this civil RICO action.

### V.

The district court in this case based its decision upon what little Eighth Circuit precedent exists with respect to a private litigant's standing under RICO. While expressing doubts about the result, the lower court relied in large part on a Missouri district court case, *Komm v. McFliker*, 662 F.Supp. 924 (W.D.Mo.1987), in which a whistle blower was allowed to bring a civil RICO action. The *Komm* court had interpreted the Eighth Circuit case *Terre Du Lac Ass'n Inc. v. Terre Du Lac, Inc.*, 772 F.2d 467 (8th Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1460, 89 L.Ed.2d 718 (1986), as commanding this result.

In *Terre Du Lac*, this court held that a subdivision association had standing to recover civil damages under RICO. The Association had sued not on behalf of its members, but on its own behalf, alleging that defendant's mail fraud scheme injured the Association by causing the cost of maintaining the roads within the subdivision to increase. This court stated "that standing to pursue a RICO action exists even though the plaintiff does not allege that it was a target of the racketeering activity and even though the plaintiff only alleges that it suffered indirect injury." *Id.* at 472 (citation omitted). The *Komm* court concluded, based on its reading of *Terre Du Lac*, that this circuit was "holding firm in allowing RICO recoveries when the illegal conduct has indirectly harmed the plaintiff." 662 F.Supp. at 928 (citing *Terre Du Lac*, 772 F.2d at 473). As a result, the district court below decided, "despite [its] doubts," that plaintiff Bowman had standing to pursue a civil suit based on § 1962(a), (b), and (c) claims as well as on a § 1962(d) conspiracy claim. Because we find that the firing of Bowman from his job was not a predicate RICO act, neither our analysis of standing under § 1962(a)–(c) nor our analysis under § 1962(d) need address the issue of indirect injuries as discussed in *Terre Du Lac*. *See Holmes*, —— U.S. ——, 112 S.Ct. 1311.

### VI.

The order of the district court holding that plaintiff Bowman has standing to

bring a civil action pursuant to 18 U.S.C. § 1964(c) based on alleged violations of 18 U.S.C. § 1962(a)–(d) is reversed. This case is remanded to the district court with directions to grant the defendant's motion to dismiss.

HEANEY, Senior Circuit Judge, dissenting:

Today the majority undermines the very policy behind the enactment of the RICO statutes. It is now the law of this circuit that an employee in a state such as Missouri has no protection should he or she choose to expose criminal activity on the part of his or her employer. As I cannot join in this evisceration of Congress's purpose in enacting this legislation, I respectfully dissent.

I agree with the majority that the circuits have split on the question of standing to allege conspiracy under RICO, that Congress has expressly prohibited conspiracy to engage in racketeering, and that the Supreme Court and Congress have mandated that RICO be read broadly to achieve its remedial purposes. *Supra* at 387. Having acknowledged the proper context in which to construe RICO's provisions, the majority then determines that, as the Supreme Court has found a need to limit the scope of RICO in an entirely different context, we should likewise do so here.

Though I agree that RICO has been used more widely than Congress contemplated and than is desirable, that sentiment does not support the holding that, as a matter of law, an employee fired in furtherance of a conspiracy to commit one of the prohibited predicate acts has no standing to sue under RICO. Rather, the approach taken by the Seventh Circuit in *Schiffels* best accommodates both the need to limit RICO standing and the purposes that underlie the RICO statute.

In *Schiffels*, the plaintiff was fired for blowing the whistle on her superior's scheme to defraud the two mutual funds that were under his management. The district court dismissed her RICO claim "because she was not injured by any predicate act of racketeering." *Schiffels*, 978 F.2d at 347. The court of appeals reversed, hold-

ing that when an employee is injured by an act in furtherance of a conspiracy prohibited by RICO, that employee has standing to sue under section 1962(d). The court described that case as one

in which an employee is fired to prevent the employee from causing the conspiracy to unravel by disclosing the scheme ... [and in which] the employee has been directly injured by the defendant's RICO violation. Just as important, the act causing the injury has been committed to further the conspiracy and is directly related to the conspiracy's goals. This brings the injured employee well within the zone of interests RICO is meant to protect. After all, RICO, which grants standing to anyone injured in his business or property "by reason of" a RICO violation, prohibits conspiracies, which do not require the commission of any predicate offenses.

*Id.* at 351.

The *Schiffels* court then found that the pleadings in that case failed properly to allege harm to the plaintiff from actions that furthered the conspiracy, but remanded to allow amendment of the pleadings. It is unnecessary for this court to reach that question prior to remand. Bowman may not be able to prove that his firing took place in furtherance of a conspiracy to commit fraud, but he should be given that opportunity. A contrary holding assures employers that when troublesome employees threaten to disclose the commission of RICO violations, those employees can be threatened with termination to keep such violations hidden from public view. Such a reading of the RICO statute hardly complies with the Supreme Court's and Congress's mandate that RICO " 'be liberally construed to effectuate its remedial purposes.' " *Sedima*, 473 U.S. at 498, 105 S.Ct. at 3286 (quoting Pub.L. 91–452, § 904(a), 84 Stat. 947). Rather, the majority's holding ensures that fewer instances of fraud will be uncovered and that Congress's intent in enacting the RICO statutes will be frustrated.